**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MORIS FRANCISCO DELGADO, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

v.

DEFALCO CONSTRUCTION INC.,
HIS & HER CONSTRUCTION INC.,
HER CONSTRUCTION INC.,
MICHAEL FALCO, and
STAR BERMUDEZ,

Defendants.

---

Case No:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiff MORIS FRANCISCO DELGADO ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, DEFALCO CONSTRUCTION INC., HIS & HER CONSTRUCTION INC., HER CONSTRUCTION INC. (the "Corporate Defendants"), MICHAEL FALCO, and STAR BERMUDEZ (the "Individual Defendants" and collectively with the Corporate Defendants, the "Defendants") and state as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that they and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving, (2) liquidated damages, and (3) attorneys' fees and costs.

2. Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), they and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving, (2) liquidated damages, (3) statutory penalties due to WTPA violations, and (4) attorneys' fees and costs.

3. Plaintiff further alleges that, pursuant to Internal Revenue Code, 26 U.S.C. § 7434, he and others similarly situated are entitled to damages and fees and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

4. Plaintiff additionally alleges that Defendants unlawfully retaliated against him, in violation of the FLSA and NYLL, shortly after Plaintiff made a lawful complaint regarding Defendants' unlawful recordkeeping practices and seeks to recover from Defendants: (1) economic damages, (2) punitive damages, and (3) attorneys' fees and costs.

5. Plaintiff further alleges, on behalf of himself and similarly situated individuals, that they were subjected to intentional and offensive physical contact in the workplace, resulting in battery and intentional infliction of emotional distress, in violation of New York common law. Plaintiff and similarly situation individuals are entitled to recover from Defendants: (1) compensatory damages for emotional distress, (2) punitive damages, (3) attorney's fees and costs.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

7. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims against Defendants occurred in this district.

## PARTIES

8. Plaintiff, for all relevant time periods, was a resident of Kings County, New York.

9. Corporate Defendant DEFALCO CONSTRUCTION INC. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and address for service of process located at 148-14 Liberty Avenue, Jamaica, NY 11435.

10. Corporate Defendant HIS & HER CONSTRUCTION INC. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 515 W 35th Street Apt 21b, New York, NY 10018, and an address for service of process at 18 New Street, Oceanside, NY, 11572-3930.

11. Corporate Defendant HER CONSTRUCTION INC. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 130 Central Avenue, Rochelle Park, New Jersey 07662, and an address for service of process at 25-27 23rd Street, Astoria, New York 11102.

12. Individual Defendant MICHAEL FALCO is the owner of Corporate Defendant DEFALCO CONSTRUCTION INC. **Exhibit A.** Individual Defendant MICHAEL FALCO exercises operational control as it relates to all employees including Plaintiff, FLSA Collective

Plaintiffs, and the Class. At all relevant times, Individual Defendant MICHAEL FALCO—by himself or through managerial staff--exercised the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members. By himself or through managerial staff, Defendant MICHAEL FALCO would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules, compensation, or terminating or hiring such employees. At all relevant times, Individual Defendant MICHAEL FALCO exercised functional control over Corporate Defendant's business and its financial operations. At times, Individual Defendant MICHAEL FALCO would delegate part of his powers as an employer—including the power to supervise and compensate, to his supervisors or the subcontractors, HIS & HER CONSTRUCTION INC., HER CONSTRUCTION INC., with which Corporate Defendant DEFALCO CONSTRUCTION INC. was working on various projects. However, Individual Defendant MICHAEL FALCO still had ultimate authority.

13. Individual Defendant STAR BERMUDEZ is the owner of Corporate Defendants HIS & HER CONSTRUCTION INC. and HER CONSTRUCTION INC. Individual Defendant STAR BERMUDEZ exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. At all relevant times, Individual Defendant STAR BERMUDEZ —by herself or through managerial staff--exercised the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members. By herself or through managerial staff, Defendant STAR BERMUDEZ would have the authority to effect any changes to the quality and terms of employees' employments,

including changing their schedules, compensation, or terminating or hiring such employees. At all relevant times, Individual Defendant STAR BERMUDEZ exercised functional control over Corporate Defendant HIS & HER CONSTRUCTION INC. and HER CONSTRUCTION INC's business and their financial operations.

14. Corporate Defendant DEFALCO CONSTRUCTION INC. subcontracted work to STAR BERMUDEZ, HIS & HER CONSTRUCTION INC., and HER CONSTRUCTION INC. ("Subcontractor Defendants"), on projects for which Plaintiff, FLSA Collective Plaintiffs, and Class Members performed labor.

15. Subcontractor Defendants collaborated with Corporate Defendant DEFALCO CONSTRUCTION INC. and Individual Defendant MICHAEL FALCO in the supervision and compensation of Plaintiff, FLSA Collective Plaintiffs, and the Class.

16. At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL.

17. At all relevant times, the work performed by Plaintiff and Class Members was directly essential to the business operated by Defendants.

**JOINT EMPLOYER ALLEGATIONS**

18. Plaintiff was originally hired by Corporate Defendant DEFALCO CONSTRUCTION INC. to work as a mason on its construction projects.

19. Throughout Plaintiff's employment, Corporate Defendant DEFALCO CONSTRUCTION INC. engaged a variety of subcontractors to perform some of the work required by its general contracts.

20. Wherever Plaintiff was working, he could see the logos of both Corporate Defendant DEFALCO CONSTRUCTION INC. and those of the Subcontractor Defendants' at the

worksites, and he received supervision both from Corporate Defendant DEFALCO CONSTRUCTION INC.'s foremen and Subcontractor Defendants' foremen. Specifically, Subcontractor Defendants issued paychecks to Plaintiff, FLSA Collective Plaintiffs, and the Class. *See* **Exhibit B**.

21. Thus, all named Defendants are jointly and severally responsible for battery, intentional infliction of emotional distress and wage violations against Plaintiff, FLSA Collective Plaintiffs, and the Class. At all relevant times, Corporate Defendant DEFALCO CONSTRUCTION INC., Individual Defendants, and Subcontractor Defendants were joint employers collaborating to manage internal procedures and keep track of Plaintiff's, FLSA Collective Plaintiffs', and Class Members' time records, scheduling, and compensation.

22. Corporate Defendant DEFALCO CONSTRUCTION INC., Individual Defendant MICHAEL FALCO, and the Subcontractor Defendants act as joint employers, who act in the interest of each other with respect to all employees subcontracted between Corporate Defendant DEFALCO CONSTRUCTION INC. and Subcontractor Defendants. Corporate Defendant DEFALCO CONSTRUCTION INC. and each Subcontractor Defendant have common policies and practices as to wages and hours while working subcontracts together. With regards to subcontracts, Corporate Defendant DEFALCO CONSTRUCTION INC. and Subcontractor Defendants shared control over Plaintiff, FLSA Collective Plaintiffs, and the Class, dictating the time, place, and matter of their employments.

23. At all relevant times, with regards to the subcontracts, (i) all Subcontractor Defendants acted directly in the interest of Corporate Defendant DEFALCO CONSTRUCTION INC., as such is the nature of a contractor/subcontractor relationship, (ii) both parties of each subcontract shared the services of the subcontracted employees, and (iii) both parties of each

subcontract shared either direct or indirect control of the subcontracted employees. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members simultaneously benefitted both Corporate Defendant DEFALCO CONSTRUCTION INC. and the Subcontractor Defendants that employed them.

24. At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, the NYLL, and regulations thereunder.

25. At all relevant times, Defendants were employers of Plaintiff, FLSA Collective Plaintiffs, and Class Members, as appropriate, within the meaning of NYLL §§ 2 and 651.

26. At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class Members were employees of the appropriate Defendants, within the meaning of NYLL §§ 2 and 651.

27. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the businesses operated by Defendants.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

28. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including laborers, elevator operators, scaffolders, demolition workers, construction workers, and masons, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

29. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay

Plaintiff and FLSA Collective Plaintiffs their proper wages, including overtime, due to Defendants' time shaving policy, and fraudulent filing.

30. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

31. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including laborers, elevator operators, scaffolders, demolition workers, construction workers, and masons, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

32. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

33. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the

calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

34. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants' unlawful withholding of wages due to their time shaving policy, as well as unlawful assault and battery against employees, and fraudulent filing.

35. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

36. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would

result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

37. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

38. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and the Class within the meaning of the New York Labor Law;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding hiring and terminating Plaintiff and Class Members;

d) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

e) Whether Defendants paid Plaintiff and Class Members all of their earned wages, including overtime;

f) Whether Defendants regularly assaulted Plaintiff and Class Members;

g) Whether Defendants participated in fraudulent filing schemes;

h) Whether Defendants properly maintained records;

i) Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law; and

j) Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by New York Labor Law.

## STATEMENT OF FACTS

***Plaintiff's Employment Background***

39. In or around October 2025, Plaintiff was hired by Defendants to work as a mason at Defendants' construction site located at 316 Kent Avenue, Brooklyn, NY 11249. Plaintiff has also worked at Defendants' construction site located at 219 42nd Street, New York, NY 10036. On or around May 2026, Defendants terminated Plaintiff in retaliation for complaining about Defendants' unlawful recordkeeping practices.

40. Throughout his employment, Plaintiff was scheduled to work five (5) days a week, Mondays through Fridays from 7:00 a.m. to 3:30 p.m. with a thirty (30)-minute lunch break, but in fact worked longer.

41. Throughout his employment, Plaintiff was compensated at a rate of $31.00 per hour and paid weekly by check. FLSA Collective Plaintiffs and Class Members worked similar hours and were similarly compensated.

***Plaintiff's Time Shaving Claims***

42. At all relevant times, Defendants knowingly and willfully subjected Plaintiff, FLSA Collective Plaintiffs, and Class Members to a policy of time shaving, in violation of the FLSA and the NYLL.

43. Throughout Plaintiff's employment, Plaintiff, FLSA Collective Plaintiffs and the Class Members were required to report to work approximately twenty (20) minutes before the start of their scheduled shifts to attend a mandatory daily team meeting at 6:45 a.m. Defendants required employees to arrive by approximately 6:40 a.m., and employees who failed to do so were sent home. Although Plaintiff and Class Members were required to report early and perform work-related activities during this time, Defendants did not compensate them for this pre-shift time. Instead, Defendants instructed Plaintiff and Class Members to record only their scheduled shift hours, from 7:00 a.m. to 3:30 p.m., on their time sheets, thereby failing to record and compensate them for the additional time worked before their scheduled shifts.

44. Additionally, around three times per week, Defendants required Plaintiff and other employees to work fifteen (15) minutes past his scheduled shift end. When Plaintiff stayed late, he was instructed by Defendants to record that he left work at 3:30 p.m. rather than the actual time he left at around 3:45 p.m. Defendants therefore did not compensate Plaintiff and other employees for the time they required him to stay past his scheduled shift end.

45. Moreover, although Plaintiff, FLSA Collective Plaintiffs and Class Members were provided with a thirty (30)-minute lunch break, approximately two (2) to three (3) times per week,

their meal breaks were interrupted by their supervisor. When a cement delivery arrived or other work-related issues arose, the supervisor would interrupt Plaintiff, FLSA Collective Plaintiffs and Class Members while they were eating and require them to resume working. As a result, Plaintiff, FLSA Collective Plaintiffs and Class Members were regularly deprived of pay for meal periods through which they actually had to work.

46. Because Plaintiff, FLSA Collective Plaintiffs and Class Members were scheduled to work 40 hours per week, Defendants' above-described time shaving scheme resulted in Defendants' failure to compensate Plaintiff, FLSA Collective Plaintiffs and Class Members for overtime wages to which they were entitled.

47. Regardless of the subcontractor with whom Corporate Defendant DEFALCO CONSTRUCTION INC. was working, and regardless of whether employees were paid directly by Corporate Defendant DEFALCO CONSTRUCTION INC. or by Subcontractor Defendants, Defendants always failed to pay Plaintiff, FLSA Collective Plaintiffs, and the Class all wages, including overtime wages, due to time shaving policy. Employees of Subcontractor Defendants were controlled by Corporate Defendant DEFALCO CONSTRUCTION INC. as the general contractor.

48. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay wages and overtime wages to Plaintiff, FLSA Collective Plaintiffs and Class Members for all hours they worked due to Defendants' policy of time shaving, in violation of the FLSA and the NYLL.

***Plaintiff's Battery Claims***

49. Throughout their employment, Plaintiff and Class Members were forced to endure battery from Defendants.

50. Throughout Plaintiff's employment, every Monday, the foreman, Cesar (LNU) would line up more than two hundred (200) employees. Cesar (LNU) would proceed to hit each employee's toes with a hammer to ensure the employees were wearing steal boots. **Exhibit C.** If employees experienced pain from the hammer, the foreman would say they were not wearing the proper footwear and would proceed to send the employee home.

51. Further, employees were required to purchase the steel boots themselves, they were not provided by Defendants.

52. Defendants' managerial employee intentionally made physical contact with Plaintiff and Class Members, as described above, through unwanted touching that was offensive and unwelcome in nature.

***Fraudulent Filing Claim***

53. At all relevant times, Defendants intentionally and willfully subjected Plaintiff, and Class Members to a policy of filing fraudulent tax information on their behalf, in violation of Internal Revenue Code.

54. Around two weeks into Plaintiff's employment with Defendants, Plaintiff's supervisor said that in order to maintain his job with Defendants, Plaintiff had to work under a different name. Defendants instructed Plaintiff, via text message, to work under his brothers' name, "Moises Mendez". From that point forward, Plaintiff's checks were written out to "Moises Mendez". Plaintiff was also informed by Defendants' other employees that Defendants required employees to work under a different name for the company each year, and that Defendants require Plaintiff and Class Members to work under different names in an effort to avoid workers' compensation claims and lawsuits.

55. As a result of Defendants' policy of forcing Plaintiff and Class Members to change names and making payment via check with false names, Defendants filed W-2 forms for Plaintiff and Class Members that misrepresented their identity. Defendants filed fraudulent information in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable to Plaintiff and Class Members for at least five thousand dollars per each fraudulent filing, which would have to be at least once per year.

***Plaintiff's Retaliation Claims***

56. Defendants violated the FLSA and the NYLL by retaliating against Plaintiff after he raised concerns regarding Defendants' unlawful payroll and recordkeeping practices, that violated the FLSA and the NYLL.

57. In or around May 2026, Plaintiff informed Defendants that he was unwilling to continue working under a fictitious name. In response, Defendants terminated Plaintiff's employment.

58. Plaintiff's termination was a direct and proximate result of him protesting Defendants' practices of unlawful payroll and recordkeeping.

59. The FLSA and the NYLL require employers to keep accurate records of employees, which include their real names. Plaintiff was terminated because he opposed Defendants' violations of the FLSA and the NYLL record-keeping requirements.

60. As a result of Defendants' retaliation, Plaintiff suffered from lost wages, anxiety, and past and future emotional distress.

***Plaintiff's WTPA Violation Claims***

61. At all relevant times, Plaintiff and Class Members never received wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

62. In failing to provide wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

63. New York Courts continue to find sufficient standing to support standing to support these claims. One such Court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

64. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, and their earned wages, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the

wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

65. By failing to report Plaintiff's and Class Members' hours, Defendants were able to reduce employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employees' W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

66. Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants' provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time shaving. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants' intentional hiding of that information, Plaintiff and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

67. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with proper wage notices and accurate wage statements, in violation of the NYLL.

68. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

69. Plaintiff realleges and incorporate all the above allegations of this Complaint as fully set forth herein.

70. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

71. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

72. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

73. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including overtime, due to time shaving.

74. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

75. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their tips, when Defendants knew or should have known such was due.

76. Defendants failed to record and preserve the full and accurate names of their employees for Social Security, as required by the FLSA 29 CRF § 516.2(a)(1).

77. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

78. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

79. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, and liquidated damages.

80. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW WAGE PROVISIONS

81. Plaintiff realleges and incorporate all the above allegations of this Complaint as fully set forth herein.

82. At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

83. Defendants willfully violated Plaintiff and Class Members' rights by subjecting them to an unlawful time shaving policy and failing to pay them wages, including overtime.

84. Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law.

85. Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment and with accurate names for the employees as required by New York Labor Law § 195(3).

86. Defendants failed to establish, maintain, and preserve true and accurate payroll records as required by New York Labor Law § 195(4).

87. Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid wage, including overtime, due to time shaving, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action, pursuant to New York Labor Law.

## COUNT III

## FRAUDULENT FILING OF INFORMATION RETURNS UNDER THE INTERNAL REVENUE CODE, 26 U.S.C. § 7434(a)

88. Plaintiff realleges and reavers all the foregoing allegations in this Complaint as if fully set forth herein.

89. Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

90. By failing to provide Plaintiff and Class Members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff and Class Members as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

91. Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

92. Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff for reasonable attorneys' fees.

**COUNT IV**
**RETALIATION UNDER THE FAIR LABOR STANDARDS ACT**
**(Individual)**

93. Plaintiff realleges and incorporates all the above allegations as against all Defendants, as if fully set forth herein.

94. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

95. At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

96. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

97. Defendants failed to record and preserve the full and accurate names of their employees for Social Security, as required by the FLSA 29 CRF § 516.2(a)(1).

98. Defendants willfully violated the FLSA by retaliating against Plaintiff by discharging him shortly after he raised his concerns about Defendants' recordkeeping policy, in violation of the FLSA.

99. In response to such complaints, Defendants unlawfully terminated Plaintiff.

100. Defendants' actions constitute a violation of the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3). The FLSA makes it unlawful for an employer to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint" or instituted or caused to be instituted a proceeding under or related to the FLSA. 29 U.S.C. § 215(a)(3).

101. Defendants' conduct was in willful disregard of the provisions of the FLSA.

102. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff suffered damages in the form of back pay from lost earnings, compensatory damages, and punitive damages. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interests, and attorneys' fees, and costs, as provided for under the FLSA.

**COUNT V**
**RETALIATION UNDER THE NEW YORK LABOR LAW**
**(Individual)**

103. Plaintiff realleges and incorporates all the above allegations as against all Defendants, as if fully set forth herein.

104. At all relevant times, Plaintiff was an employee of Defendants within the meaning of the NYLL, and was a person covered by and intended to benefit from the provisions of the NYLL.

105. Defendants willfully violated the NYLL by retaliating against Plaintiff by discharging him shortly after he raised his concerns about Defendants' unlawful recordkeeping policy.

106. In response to such complaints, Defendants terminated Plaintiff in violation of Section 215 (a).

107. NYLL § 195(4) requires employers to establish, maintain, and preserve for not less than six years contemporaneous, true, and accurate payroll records.

108. Defendants' retaliatory actions constitute a violation of Section 215 of the NYLL. In relevant part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (1) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner.

109. Defendants' conduct was in willful disregard of the provisions of the NYLL.

110. As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff suffered damages in the form of back pay from lost earnings, compensatory damages, and punitive damages. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interests, attorneys' fees, and costs, as provided for under the NYLL.

**COUNT VI**
**CIVIL BATTERY**

111. Plaintiff realleges and incorporates all of the above allegations as against all Defendants, as if fully set forth herein.

> "The elements of battery are: an (1) intentional (2) bodily contact that was (3) of an offensive nature (*Messina v Alan Matarasso, M.D., F.A.C.S., P.C.*, 284 AD2d 32 [1st Dept 2011]; *Cerilli v Kezis*, 16 AD3d 363 [2d Dept 2005]). The Court of Appeals has specified that the first element of intent is satisfied by an "intent to cause a bodily contact that a reasonable person would find offensive (*Jeffreys v Griffin*, 1 NY3d 34, 41 n 2 [2003] [internal quotation marks omitted])."

*Vasquez v. Manhattan Physician Grp.*, 2018 N.Y. Slip Op. 30157, 11 (N.Y. Sup. Ct. 2018)

112. Defendants committed battery by intentionally striking Plaintiff and Class Members on their toes with a hammer, causing, among other things, physical pain, injury, and emotional distress. The foreman, Cesar (LNU), intentionally struck each employee's toes with a hammer, thereby making intentional bodily contact with Plaintiff and Class Members using a heavy object. Such contact was offensive because it was unwanted, and involved intentionally striking employees' bodies with a hammer. The contact was further offensive because it was inflicted for no legitimate purpose and caused Plaintiff and Class Members to experience pain, fear, humiliation, and emotional distress.

113. As a direct and proximate result of the aforementioned batteries, Plaintiff and Class Members have sustained in the past, and will sustain in the future, pain and suffering, psychological and emotional distress, mental anguish, embarrassment and humiliation.

**COUNT VII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

114. Plaintiff realleges and incorporates all of the above allegations as against all Defendants, as if fully set forth herein.

115. Defendants engaged in extreme and outrageous conduct.

116. Defendants' foreman, Cesar (LNU), by intentionally striking Plaintiff and Class Members on their toes with a hammer, intended to cause, or disregarded a substantial probability of causing, severe emotional distress to Plaintiff and Class Members.

117. There exists a causal connection between the above conduct and said injury.

118. As a result of said conduct, Plaintiff and Class Members suffered and suffer from severe emotional distress.

> "A cause of action to recover damages for negligent infliction of emotional distress requires a plaintiff to show a breach of a duty owed to him which unreasonably endangered his physical safety or caused him to fear for his own safety."

*Ho v. Pierpont Reservations Ltd*., 2020 U.S. Dist. LEXIS 58240, at *13 (S.D.N.Y. April 2, 2020)

> "A breach of the duty of care resulting directly in emotional harm is compensable even though no physical injury occurred when the mental injury is a direct, rather than a consequential, result of the breach and when the claim possesses some guarantee of genuineness"

*Ornstein v. New York City Health & Hosps. Corp*., 10 N.Y.3d 1, 6 (2008) (internal quotes and citations omitted).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, including overtime, due to Defendants' time shaving policy, due under the FLSA and the NYLL;

d. An award of statutory damages to Plaintiff and each Class Member under 26 U.S.C. § 7434 for each violation;

e. An award of all applicable damages to Plaintiff for Defendants' retaliation against him pursuant to the FLSA and the NYLL;

f. An award of compensatory damages to Plaintiff and Class Members for mental, emotional and physical injury, distress, pain and suffering in an amount to be proven;

g. An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

h. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

i. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

j. An award of punitive damages as a result of Defendants' battery and intentional infliction of emotional distress;

k. An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

l. Designation of Plaintiff as Representatives of the FLSA Collective Plaintiffs;

m. Designation of this action as a class action pursuant to F.R.C.P. 23;

n. Designation of Plaintiff as Representative of the Class; and

o. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: October 7, 2026
New York, New York

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

By: /s/ *C.K. Lee*
C.K. Lee, Esq.